## McCracken v. Doklan

*William J. Carlin*, for plaintiff.

*Smith & Mountenay*, for defendant.

*Achey & Power*, for additional defendant.

SATTERTHWAITE, J., April 11, 1958.—Notwithstanding the protracted maneuvering for tactical advantage which has obviously characterized the history of this litigation, the sole present question is whether

or not wife-plaintiff is entitled to a copy of the reports of medical examinations sought to be made of her person by defendant's physicians under Pa. R. C. P. 4010 in preparation for trial of a personal injury case. The matter originally arose on defendant's application for physical examinations to be made respectively by a radiologist, an orthopedist and another specialist who would conduct an electro-myographic test, all allegedly required because of wife-plaintiff's belated claim of a herniated inter-vertebral disc as a result of the accident in suit. Defendant has now limited his request to examination by the radiologist and the orthopedist.

Plaintiff at first opposed the making of any of such examinations on the ground that she had already been subjected to diagnosis by other physicians on defendant's behalf; however, she has now withdrawn that objection and agrees to defendant's present requests, provided, however, that her counsel be furnished with copies of the reports of the results thereof. She further agrees, upon request, to furnish counsel for defendant with copies of all reports of physicians who have examined or treated her for injuries sustained in the accident. Defendant, although insisting upon his right to the examinations, has refused to agree to the conditions suggested by plaintiff, contending in argument before the court en banc that there was no authority for such a limitation, and further, that Pa. R. C. P. 4011(*d*) absolutely precluded the same.

Pa. R. C. P. 4010 provides as follows:

"The court, on the motion of a party, *may* order a party to submit to a physical or mental examination by a physician when his physical or mental condition is in controversy in the action." (Italics supplied.)

Defendant points to the fact that Pa. R. C. P. 4010 is derived from Federal Rule of Civil Procedure 35(*a*) and that subparagraph (*b*) of the latter, providing for compulsory exchange of medical reports resulting

from such examination, has no counterpart in the Pennsylvania Rules. He therefore contends that Pennsylvania courts are without power to provide for such exchange, citing 5 Anderson Pa. Civ. Prac. 260, 262, and Feldman v. Seligman & Latz, Inc., 9 D. & C. 2d 394.

We are not convinced by either of these authorities. The problem here presented was not before the court in the Feldman case. There the question was whether or not plaintiff's physician could be examined by defendant on oral depositions rather than by written interrogatories, it being contended on plaintiff's behalf that this procedure would cause unreasonable annoyance, expense and oppression to the doctor. After denying plaintiff's position upon the merits, the court's opinion further went on to make the gratuitous and apparently off-hand observation that the objection might have been overcome by the voluntary exchange of medical reports, but that unfortunately the court did not appear to have power to compel that result. The cited case did not involve the grant or refusal of a compulsory physical examination of plaintiff's person, and quite probably the considerations here presented were not even in contemplation by the court in making the incidental remark relied upon by defendant in the instant case.

It is to be noted that the language of Pa. R. C. P. 4010 is permissive, not mandatory; the medical examination is not a matter of absolute right. It needs no citation of authority to demonstrate that the court necessarily must, therefore, have at least some degree of discretion in the administration of the rule. Such discretion should be exercised in light of the obvious purpose of the whole chapter of the Rules of Civil Procedure relating to discovery, i.e., to permit the full and free acquisition of relevant pretrial information which will substantially aid in the preparation of the case on *either* side, subject to certain specific practical

and reasonable limitations, so that the matter may be judicially disposed of on its merits rather than upon considerations of surprise or other accidental tactical advantage which one party might have over the other solely because of particular circumstances of the background of the case.

The situation in the instant case is not unlike that presented in Perkins v. Pittsburgh Railways Co., 6 D. & C. 2d 655, where defendant sought a sanction order in a personal injury case because plaintiff refused to answer certain interrogatories. Such refusal, however, arose because of defendant's failure to give plaintiff a copy of a written statement plaintiff had made to defendant's investigator shortly after the accident, it being alleged that the investigator promised to do so and on the strength of such promise plaintiff signed the statement. The court, in an opinion by Judge Montgomery who also wrote the opinion for the Court of Common Pleas of Allegheny County in the Feldman case, supra, refused to grant unqualified relief to defendant, indicating doubt as to its good faith, and made an order directing that sanctions be entered against plaintiff only if and when a copy of the statement be furnished, stating, at page 656:

"The very purpose of rules of discovery is to substantially aid a party with the preparation of the pleadings or the preparation of the trial of the case. It is the opinion of this court that if defendant is seeking answers to the interrogatories in good faith, then there should be no objection to furnishing plaintiff with a copy of her prior written statement. Otherwise, it would appear that defendant's motive is not to obtain aid in the preparation of its case but rather to place plaintiff in an unfavorable tactical position."

It seems apparent that the decisions in both the Feldman and the Perkins cases were governed by a policy of liberal construction and equitable application

of the Supreme Court discovery rules, a policy to which this court likewise is already committed: Lippincott v. Graham, 3 Bucks 16; Minichino v. Borough of Quakertown, 88 D. & C. 83.

We do not agree with the commentary by Mr. Anderson, cited supra, to the effect that the failure of the Pennsylvania Rules to include any provisions similar to Federal rule 35 (b) should be deemed necessarily to exclude the adoption of a local rule patterned after that Federal provision and that therefore the Pennsylvania courts are without power to provide for exchange of medical reports. This court certainly has the power to advance upon the Pennsylvania Rules of Civil Procedure so long as the amplification is not inconsistent or in conflict therewith: Act of June 21, 1937, P. L. 1982, sec. 2, as amended, 17 PS §62, and we see no inconsistency or conflict in granting plaintiff's request in the present case.

It is true that we neither have, nor intend presently to promulgate, any general rule on the subject, believing until experience may dictate to the contrary that each case should be disposed of under its own facts. Nevertheless, we have no doubt but that we may exercise our necessarily inherent rule making power by special order in particular cases to the same degree that we might otherwise apply a general rule to all cases, especially if a general rule be unnecessary or undesirable as where questions of discretion are involved.

Pa. R. C. P. 4011 provides, in material part, as follows:

"No discovery or inspection shall be permitted which . . .

"(d) would disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial

or would obtain any such thing from a party or his insurer, or the attorney or agent of either of them, other than information as to the identity or whereabouts of witnesses; . . ."

It may well be that under the provisions of this rule plaintiff would not be entitled, under Pa. R. C. P. 4009, for example, to inspection of medical reports which defendant had obtained otherwise than through judicial action: Fetterolf v. Levick, etc., 80 D. & C. 523, 527. The rules protect such information as a party may obtain by his own independent investigation in anticipation of litigation. It does not necessarily follow, however, that the same considerations apply where the adverse party himself is unable to obtain such information without the assistance of an order of court which it is within the discretion of the court either to grant or to withhold. In such a situation, it is not entirely through his own efforts that he secures the desired information. The policy purpose as stated in Pa. R. C. P. 4011 (d) accordingly would not inevitably and inexorably apply so as absolutely to prohibit the court from making quasi-judicial records equally available to all interested parties, the same as copies of depositions or answers to interrogatories would be.

Defendant's arguments on both features of the case are completely answered, in our opinion, by the following extract on the subjects from Goodrich-Amram, Procedural Rules Service, vol. 4, sec. 4010-9, pages 197-198:

"Rule 4010 permits the court to refuse any examination at all. It permits the court to couple its allowance of the examination with appropriate limitations or conditions. No limit is placed upon their scope other than the implied restraints that they may not violate the constitutional rights of any party, they may not impair substantive rights, they may not violate an

Act of Assembly, and they must not be so unfair in content as to constitute an 'abuse of discretion.'

"An order for exchange of reports is purely permissive to the party examined. It gives him the privilege of securing a copy of the examiner's report, if he will meet the conditions of reciprocity. He is under no obligation to avail himself of the privilege. It deals with a matter on which the Rules are silent. It is not 'in conflict' with, or 'inconsistent' with, anything in the Rules. It does not violate any of the implied restraints, which restrict the scope of the court's order.

"Nor would such an order of the lower court be in violation of Rule 4011 (d). The report of the examining physician is not a 'report . . . made . . . in anticipation of litigation or in preparation for trial,' within the meaning of this Rule. Rule 4011 (d) applies to the type of personal and private trial investigation which is undertaken by a party entirely on his own. What he thus secures is his personal and private property, he need not make it available to his opponent.

"But here the information does not come from an outside, private source unknown to the opposite party; it is not the fruit of the investigatory imagination of the inquirer; it is not the result of purely 'extrajudicial' activities. It comes from the opposite party himself, and it does not even come voluntarily from him, it comes only pursuant to the compulsion of the order of the court itself. The report is at least in part in the nature of the parties' own involuntary 'testimony,' to which he is entitled to a copy; it clearly has 'judicial' characteristics. It would extend the intent of Rule 4011 (d) to have it impose secrecy upon the report of the examining physician prepared pursuant to an order of the court; and to have it used as a ground to forbid the exchange of physician's reports."

In view of the foregoing considerations, we conclude that the limitations suggested by plaintiff upon de-

fendant's right to further physical examinations of her person are reasonable and justified in the present case under the broad purposes and policies inherent in the present discovery rules. It is unfortunate, however, that plaintiff did not adopt her present position until a considerable delay had ensued after this case came at issue. In this connection, we take this opportunity to call attention to an observation made by Judge Alessandroni in Lichtman v. Lipoff, 10 D. & C. 2d 725, 728, which is pointedly applicable to a substantial number of the cases involving these discovery rules which have come before this court:

"It can reasonably be concluded from the record that there existed an intention to obstruct and thwart, if possible, the salutary purposes of discovery. The record further reveals that a residual feeling exists to the effect that another arena for technical jousting has been provided in addition to those of the pleadings and the court room. Activity which discloses the existence of this concept of discovery should not be and can no longer be tolerated."

*Order*

And now, April 11, 1958, Marion McCracken, plaintiff, is directed to appear and submit to a physical examination to be conducted by Dr. John A. Prickett and Dr. John Francis Gordon at the Doylestown Hospital, at a time mutually agreeable to counsel, said examination to include the right to take X-rays. It is further ordered that defendant shall furnish counsel for Marion McCracken, plaintiff, with copies of the reports of Dr. Prickett and Dr. Gordon rendered pursuant to such examination. It is further ordered that counsel for Marion McCracken, plaintiff, upon request, shall furnish to counsel for defendant, Adam Doklan, Jr., and for additional defendant, John B. Ward, copies of reports made by any physicians who have examined or treated said Marion McCracken by

reason of the injuries alleged to have been sustained in the accident which forms the subject of the within suit.

Judge Rubin did not participate in the decision of this case.